## MONROE COUNTY COMMISSIONERS v DILLON

Ohio Appeals, 7th Dist, Monroe Co
Decided April 30, 1930

W. J. Walker, St. Clairsville, and Moore, Devaul & Moore, Woodsfield, for Dillon.

J. K. Sawyers, Jr., and Matz and Matz, Woodsfield, for Hall et, Commissioners.

POLLOCK, J.

We will take up first the questions arising under the first cause of action. It is first insisted that notwithstanding the general verdict, a judgment should be entered on the special findings of the jury. These findings, so far as they refer to the first cause of action, are as follows:

"The jury, if it returns a general verdict in favor of plaintiff, will answer the following interrogatories:—

First: Was the road in question completed in conformance with the contract, and the plans and specifications?

Answer: No.

Second Question: Was the road accepted by the Board of Commissioners of Monroe County, Ohio, as completed?

Answer: No."

We will refer to the principals of law governing this question. The question was before the Supreme Court in the case of **Davis v Turner, 69 Oh St, 101.** We will only refer to the law as announced in the opinion on page 118:

"Special findings in answer to interrogatories override the general verdict only when both cannot stand; and the Supreme Court will not direct a judgment in favor of a party against whom the general verdict has been rendered, unless this antagonism is apparent on the face of the record and the special finding cannot, by any hypothesis, be reconciled with the general verdict."

It will be noticed that a verdict will not be so directed unless the special findings cannot by any hypothesis be reconciled with the general verdict.

The first question simply called for an answer of "No," if the jury found that the road was not completed in conformity with the contract, and the plans and specifications. There might be ever so small a variation, or failure to comply with the plans and specifications, yet the jury, under this interrogatory, would be required to answer as it did.

The second interrogatory is asking the jury to find whether the Board of Commissioners of Monroe County accepted the road as completed, and the answer is "No."

There is no claim in the evidence that it did as a Board of Commissioners. If it had, the jury would only have had to determine the amount due under the contract, and that was agreed upon, so that neither of these interrogatories, and the answers thereto require a judgment, notwithstanding the verdict.

We will then go to the question of the errors in the admission of evidence. The first error complained of is on page 11, where the plaintiff below was asked and answered that he had completed the road according to the plans and specifications. This was asking for an opinion and was not competent, but the error is not sufficient to reverse the judgment.

Then, the question objected to, so far as we need now to refer to it, as to whether he graded the road according to the stakes set by the engineer of the county, and he answered that he had. We think he had a right to testify to what he did.

The plaintiff below testified to a conversation which he had with the then County Engineer, Mr. Detlor, and following that, he testified to a conversation which he had with reference to Mr. Hall, one of the County Commissioners. These conversations with Mr. Hall, following that of the engineer, were in regard to what had been done on the road, and its acceptance.

The plaintiff testified that Mr. Hall came on the contract in obedience to the direction of the engineer, then, to the conversation which they had in regard to the work on the road, and its acceptance. This testimony was given without any objection; then, on page 28, he was asked to state whether or not in the conversation with Mr. Detlor the day before that Mr. Hall accepted the job.

There was an objection which was overruled, and, following that, are questions in regard to what Detlor said in regard to Mr. Hall, and what Mr. Hall said in regard to the acceptance of this work. There were objections to these questions, overruled and exceptions noted.

The testimony thus elicited was not competent. The engineer could not bind the commissioners by anything that he said about the acceptance of the road on the part of the commissioners, and one of the commissioners, Mr. Hall, could not accept the road on behalf of the County Commissioners unless he had been, prior to that time, authorized by the other members of the board to do so, and that is not claimed.

There is no testimony here that this road ever was accepted by the commissioners, and the jury found that it was not, so that we cannot say that this testimony was so prejudicial as to reverse the judgment.

The next error complained of, in regard to the introduction of evidence, is on page

94. One of the deputy engineers, who was not in that position at the time the road was completed, testified to the making of a certain map which was intended to show the profile of the road as agreed to be improved, and the way it was improved. He was asked this question:

"Q—These 3 lines running between stations 1 and 79 at the bottom represent what?"

There was an objection, which was overruled, and exception noted.

"A—The 3 lines represent the difference in the elevation as to where the natural ground was, and where it was supposed to be, and where it actually is."

There was a motion made to strike this out as not being responsive, and it was sustained.

Then, again, in answer to a question speaking of lines on the map:

"A—They represent the center line where it should be, and where it actually is."

And there was another one which was stricken out, and he said in answer to that question:

"A—That is where the center line should be."

It will be noticed from these questions he uses "Where it was supposed to be," and "Where it should be." No doubt, the engineer was referring, when he states "Where it should be," to the lines as on the profile or plans and specifications for the improvement of the road, but he does not so state.

We cannot say there was any error in sustaining objections to these questions. There can be no question but what this engineer had a right to identify these lines, and testify before the jury as to what that represented, but not in this indefinite manner.

There is also error claimed in sustaining the objections to certain questions asked the plaintiff below, in regard to whether the road as it existed at the time of the trial, was substantially as he left it.

It appears that the plaintiff had been over this road just shortly before the date of the trial. These questions were competent but that subject had been covered in many questions asked prior to that time, and the answers given. There was no error in the court not permitting the further cross examination.

We come now to whether this claim is manifestly against the weight of the evidence. There is much testimony introduced in this case in regard to the completion of this road. It appears that the plaintiff began work on this contract soon after entering into it, and continued during that summer, when, under some arrangement, or on his own volition, he moved his tools, claiming that he had completed the contract.

The next spring he was notified to come back, and, as he claims, he did all that he was directed to do towards completing this contract, and there is testimony to sustain that proposition.

Now, in regard to what he had done the first summer, the contract provided that stakes, indicating the location of the work to be done under this contract, should be set by the engineer. The contractor shall carefully preserve all such stakes.

It appears that the engineer entered into an arrangement with Mr. L. E. House, an engineer, to do the setting of these stakes. Mr. House, at that time, was in the employ of the plaintiff. This was known to the engineer of the county.

There is evidence tending to sustain the claim of the plaintiff below that he graded and completed this contract according to the stakes, and the directions thereon, which this engineer set, or, in other words, which the County Engineer furnished him.

There is evidence that at one end of this road, it was not completed according to the plans and specifications, but there is no question but what this was done under an arrangement between the contractor and the engineer, and the commissioners, that the road should be changed from its original location so as to avoid the building of a bridge.

While this arrangement was not spread upon the minutes of the commissioners, yet there can be no doubt but what it was entered into, and performed as part of the original contract.

We do not think that the evidence in this case sustains the contention of the plaintiff below, that the point on this road known as "The Narrows," that it was completed to the width that the plans and specifications required; but there is evidence, as we have stated, that it was completed according to the stakes set by the person authorized to set them by the engineer, and, also, that when the plaintiff came back the next spring, that he did what was required of him by the engineering department of this county.

We cannot find that the contract was not completed, as indicated by this engineer

who was in the employ of the commissioners, and the county cannot deny now that the original contract was not completed.

We then come to the second cause of action, which we have said was only an account for extra work done. This extra work was not done in accordance with the agreement that the plaintiff below could only recover for extra work when it was agreed to by the engineer and the commissioners, and spread upon the journal of the commissioners.

We do not wish to be understood as holding that it actually had to be spread upon the minutes. If it had been proved that the contract was otherwise made, but the commissioners neglected or failed to spread it upon their minutes, they would still be bound, but we do not think we need consider this second cause of action further.

In the special interrogatories asked, in answer to the question:

"Q—Was the work for which extra compensation is sued for in the petition, ordered by the Engineer and the Commissioners, and a record of such facts spread upon their journal?"

The answer is:—

"First, for hauling culvert pipe. Second, No."

Then the next question is:—

"Q—How many cubic yards of excavation, if any, in excess of the amount called for by the contract, plans, profiles, and specifications were removed by plaintiff?"

and the answer is:

"A—Not any."

The verdict in this case was for somewhat less than the amount claimed in the first cause of action, which was the amount of the contract price remaining unpaid, so that we are to presume from this last answer that the jury did not allow for any extra compensation except for hauling the culvert pipe. In other words, the jury found against the plaintiff below on this second cause of action except the amount for the hauling of the pipe, as we have stated, which was $17.50, too small an amount to set the verdict aside even if the jury allowed it.

The judgment of the court below is affirmed.

FARR and ROBERTS, JJ, concur.